UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RALPH EDWARD WAGNER, | | **REPORT** |
| | Plaintiff, | **and** |
| | | **RECOMMENDATION** |
| v. | | |
| | | **13-CV-00346A(F)** |
| CAROLYN W. COLVIN, [1] Commissioner of | | |
| Social Security, | | |
| | | |
| | Defendant. | |

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER
                        Attorneys for Plaintiff
                        ELIZABETH ANN HAUNGS, of Counsel
                        IDA M. COMERFORD, of Counsel
                        6000 North Bailey Avenue
                        Suite 1A
                        Amherst, New York 14226

                        WILLIAM J. HOCHUL, JR.
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        MARY K. ROACH
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York 14202, and

                        STEPHEN P. CONTE
                        Regional Chief Counsel - Region II
                        SANDRA M. GROSSFELD
                        Assistant Regional Counsel
                        United States Social Security Administration
                        Office of the General Counsel, of Counsel
                        26 Federal Plaza
                        Room 3904
                        New York, New York 10278

1

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on July 16, 2013.  (Doc. No. 8).  The matter is presently before the court on motions for judgment on the pleadings, filed on February 28, 2014, by Defendant (Doc. No. 16), and on April 28, 2014, by Plaintiff (Doc. No. 18).

## BACKGROUND

Plaintiff Ralph Edward Wagner ("Plaintiff" or "Wagner"), seeks review of Defendant's decision denying him Supplemental Security Income Benefits ("SSI") benefits under Title XVI of the Act.  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of depression, anxiety, and bipolar disorder (R. 33), but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 33).[2]  Defendant further determined that Plaintiff had the residual functional capacity to perform the full range of medium work with the limitations of no work in unprotected heights, around heavy, moving or dangerous machinery, and no climbing ropes, ladders or scaffolds.  (R. 34).  As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date of December 1, 2005, through the date of the Administrative Law Judge's decision on March 21, 2011.

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

**PROCEDURAL HISTORY**

Plaintiff filed applications for disability benefits on May 28, 2009 (R. 213-17),[1] alleging disability based on depression, anxiety, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD").  (R. 131).  The application was initially denied by Defendant on March 21, 2011 (R. 31-38), and, pursuant to Plaintiff's request filed April 8, 2011 (R. 26), a hearing was held before Administrative Law Judge Robert T. Harvey ("Harvey" or "the ALJ"), on February 28, 2011, in Buffalo, New York.  (R. 66-105). Plaintiff, represented by Amanda Jordan, Esq. ("Jordan"), appeared and testified at the hearing.  (R. 66-94).  The ALJ's decision denying the claim was rendered on March 21, 2011.  (R. 31-38).

Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on February 12, 2013.  (R. 1-5). This action followed on April 8, 2013, with Plaintiff alleging that the ALJ erred by failing to find him disabled (Doc. No. 1).

Defendant's answer, filed on July 15, 2013 (Doc. No. 7), was accompanied by the record of the administrative proceedings.  On February 28, 2014, Defendant filed Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 16) ("Defendant's Memorandum").  On April 28, 2014, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 18) ("Plaintiff's Memorandum").  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion for remand for further development of the record should be GRANTED.

---

[1] The record indicates that Plaintiff filed an unsuccessful application for disability benefits on July 27, 2006, that was denied by the ALJ on January 28, 2009 (R. 109-115), and confirmed by the Appeals Council on March 23, 2009.  (R. 116-19).

# FACTS[2]

Plaintiff, Ralph Edward Wagner, ("Wagner" or "Plaintiff"), was born on January 18, 1954, lives with his girlfriend, and has not worked since 2005, when Plaintiff, then employed in trucking, loading and unloading trucks, alleges that he stopped working as a result of his impairments. (R. 213). Plaintiff alleges that he is not able to work because he suffers ADHD, generalized anxiety, depression, and high blood pressure.[3] (R. 229).

Relative to the Plaintiff's disability onset date of December 1, 2005, on April 25, 2007, Plaintiff visited Catholic Health Systems Primary Care Services, where Qamrunissa Rahman, M.D. ("Dr. Rahman"), reviewed the results of a blood test administered on April 18, 2007, and noted that Plaintiff reported that the Lexapro (anxiety, depression) that Plaintiff was taking was not working. (R. 312-19). On September 17, 2008, Plaintiff visited Horizons Health Services ("Horizons"), a mental health facility in Tonawanda, New York, where Kim Emminger ("Ms. Emminger"), a social worker, completed a behavioral health assessment on Plaintiff under the supervision of Christopher Frigon ("Mr. Frigon"), a licensed clinical social worker at Horizons. (R. 340-55). Plaintiff reported symptoms of depression and mood lability for four years, that he had been treated for a bipolar disorder until his treatment was

---

[2] Taken from the pleadings and the administrative record.
[3] Normal blood pressure measures with a systolic number less than 120 and diastolic number measured at less than 80. Pre-hypertension is blood pressure measured at 120-139/80-89, Stage 1 high blood pressure is measured as 140-59/90-99, Stage 2 high blood pressure is measured as 160 or higher/100 or higher, Hypertensive crisis is blood pressure measured at higher than 180/higher than 110. *See* http://www.heart.org/HEARTORG/Conditions/HighBloodPressure/AboutHighBloodPressure/ Understanding-Blood-Pressure-Readings.

discontinued as a result of his non-compliance (R. 340), and that his Risperdal (bipolar),

Lexapro, and Lamictal (bipolar), prescriptions had not been re-filled since May, 2008.

(R. 344).  Ms. Emminger assessed Plaintiff with guarded behavior, depressed and

anxious affect, and a tangential thought process not easily directed.  (R. 351).

On October 3, 2008, David Pawlowski, M.D. ("Dr. Pawlowski"), a physician at

Highgate Medical Group ("Highgate"), completed a routine physical examination on

Plaintiff, and assessed Plaintiff with a body mass index ("BMI")[4] of 38.8, and bipolar

disorder not elsewhere classified ("NEC").  (R. 321-33).  Dr. Pawlowski assessed

Plaintiff with a cooperative attitude, normal and coherent speech, clear flowing thought

processes, realistic judgment, appropriate insight, normal affect, and coherent and

logical thought processes.  (R. 323).

On January 28, 2009, Nurse Practitioner Gerald Frisicaro ("Nurse Practitioner

Frisicaro"), a psychiatric nurse practitioner at Horizons, completed an initial psychiatric

assessment on Plaintiff, and noted that Plaintiff's visit related to a residential housing

application that Plaintiff wanted to be completed.  (R. 400). Nurse Practitioner Frisicaro

noted that Plaintiff reported taking Risperdal, Lamictal and Lexapro for 3 years until 6

months earlier when Plaintiff stopped taking his medications.  (R. 400).  Nurse

Practitioner Frisicaro evaluated Plaintiff using the DSM[5] multiaxial scale, and diagnosed

---

[4] BMI measures a person's health and fitness using an individual's height and weight. A BMI below 25 is normal, an individual with a BMI between 25-29 is overweight, an individual with a BMI of 30 or greater is considered obese, a BMI over 40 means a person is morbidly obese and at highest risk to develop cardiovascular disease, heart disease, diabetes without intervention. *See* http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.
[5] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I clinical disorders, Axis II personality disorders, Axis III general medical conditions, Axis IV psychosocial and environmental stressors, and Axis V global assessment of functioning.  American Psychiatric Association*, Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

Plaintiff with Axis I generalized anxiety disorder, Axis IV psychosocial environmental

stressors including long term antisocial and vocational under-functioning, assessed

Plaintiff with an Axis V global assessment of functioning ("GAF")[6] score of 50, and noted

that Plaintiff had obvious difficulties with focus, concentration, and inattentiveness, a

highly ruminative thought processes with constant worry, good insight, judgment, and

impulse control, and no thoughts of suicide.  *Id.*

On February 23, 2009, Plaintiff visited Transitional Services, Inc., a residential

housing placement program for individuals with mental illness, where an intake

counselor completed an assessment of Plaintiff, and noted that Plaintiff reported the

ability to do laundry, take daily showers, wash dishes, make the bed, vacuum, and tend

to general housekeeping chores.  (R. 333).  Plaintiff reported that he tended to blame

external factors on his job insecurity, and that after Plaintiff's last job ended Plaintiff

decided that it was time to "figure out his disability," and apply for social security

disability benefits.  (R. 332).  Plaintiff further reported that he did not believe that his

bipolar diagnosis was correct, and that he experienced moodiness, lack of focus, and

difficulty sleeping.  (R. 331).

On June 9, 2009, Belito Arana, M.D. ("Dr. Arana"), a psychiatrist at Horizons,

provided medication management and treatment for Plaintiff, and noted that Plaintiff

was taking Celexa (anxiety) and Geodon (schizophrenia and bipolar disorder), and re-

filled Plaintiff's prescriptions.  (R. 339).

---

[6] The Global Assessment of Functioning ("GAF") scale is a numeric scale used to rate the functioning of adults.  A GAF score of 50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work).

Plaintiff returned to Dr. Arana on August 4, 2009, where Dr. Arana re-filled Plaintiff's prescriptions.  (R. 338).

On September 22, 2009, Thomas Ryan, PhD. ("Dr. Ryan"), completed a consultative psychiatric examination on Plaintiff where Plaintiff reported sinus problems, and no psychiatric hospitalizations.  (R. 356).  Dr. Ryan assessed Plaintiff with coherent thought processes with no evidence of delusions, paranoia, or hallucinations, intact attention and concentration, intact memory, and average intellectual functioning, and opined that Plaintiff exhibited no significant limitations to Plaintiff's ability to follow and understand simple directions, maintain attention and concentration, a regular schedule and learn new tasks, but that Plaintiff had mild to moderate limitations to his ability to perform complex tasks, make adequate decisions, relate to others, and deal with stress. (R. 358).  Dr. Ryan diagnosed Plaintiff with Axis I bipolar disorder and ADHD, Axis III high blood pressure and sinus problems, and recommended that Plaintiff continue his mental health counseling treatment.  (R. 358-59).

On September 22, 2009, Kathleen Kelley, M.D. ("Dr. Kelley"), completed a consultative internal medical examination on Plaintiff on behalf of the Social Security Administration, and noted that Plaintiff reported activities of daily living that included cooking, cleaning, doing laundry, showering, daily bathing and dressing, listening to the radio, and limited reading as a result of ADHD.  (R. 361).  Dr. Kelley completed an evaluation of Plaintiff's spine, and assessed Plaintiff with lumbar flexion of 75 degrees upon flexion, 5 degrees upon extension, and 15 degrees lateral flexion bilaterally (R. 362), and diagnosed Plaintiff with Axis I depression with ADHD and bipolar disorder, Axis II non-specific low back discomfort with slight decreased range of motion without

radiculopathy, weakness, or bladder compromise, controlled hypertension, occasional

sinus problems, and obesity (R. 363), and opined that any repetitive bending and

twisting of Plaintiff's spine would require Plaintiff to take comfort breaks.

On September 30, 2009, E. Charles, M.D. ("Dr. Charles"), a state agency

examining physician, completed a Psychiatric Review Technique form on Plaintiff and

evaluated Plaintiff with bipolar disorder with ADHD, and mild restriction to Plaintiff's

activities of daily living, ability to maintain concentration, persistence or pace, and

Plaintiff's ability for social functioning.  (R. 375).

On May 5, 2010, at the request of Plaintiff's attorney, Katie Janik, ("Ms. Janik") a

licensed social worker at Horizons, completed a mental residual functional capacity

report where she noted that she provided one-to-one mental health counseling to

Plaintiff for 30-45 minutes on a bi-weekly basis.[7]  (R. 393).  Ms. Janik assessed Plaintiff

with a GAF score of 55, and reported that Plaintiff exhibited anhedonia (lack of

pleasure), anxiety, mood disturbance, difficulty thinking or concentrating, persistent

disturbances to mood, sleep disturbances, and emotional withdrawal and isolation.  (R.

394).

## DISCUSSION

### 1.   Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

---

[7] The record does not indicate the time period during which Ms. Janik provided treatment to Plaintiff.

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.** **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if

supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520

and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.*

*Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the

applicant is engaged in substantial gainful activity during the period for which benefits

are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in

such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

The next step is to determine whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities as defined in

the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the

regulations and meets the duration requirement, the individual is deemed disabled,

regardless of the applicant's age, education or work experience, 20 C.F.R. §§

404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also*

*Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

        However, as a fourth step, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If

the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past

work, the Commissioner will consider the individual's "residual functional capacity," age,

education and past work experience in order to determine whether the applicant can

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also*

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

show that he is without "the residual functional capacity to perform [her] past work").  If

the Commissioner finds that the applicant cannot perform any other work, the applicant

is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g),

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson,* 402 U.S. at 410.

B.      **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 28, 2009, the date of Plaintiff's disability application.  (R. 33).  Plaintiff does not contest this determination.

C.      **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination of whether the claimant had a severe medically determinable physical or mental impairment that meets the duration requirement under 20 C.F.R. § 404.1509, and significantly limits the claimant's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and

usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of depression, anxiety, and bipolar disorder, and that Plaintiff's hypertension and obesity were non-severe as defined under 20 C.F.R. § 416.920(c).  (R. 22).  Plaintiff does not contest the ALJ's step two disability finding.

## D.     Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders), and 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety Related Disorders).  The listed impairments are addressed in turn.

**Affective Disorders**

In the instant case, the ALJ determined that Plaintiff has the severe impairment of a bipolar disorder, but that Plaintiff's bipolar disorder does not meet or equal the criteria of the listed impairment under § 12.04, such that Plaintiff is disabled.  (R. 33). The ALJ found that substantial evidence supports that the Plaintiff is not able to meet

the criteria necessary to establish disability under §§ 12.04B or C, because Plaintiff's

bipolar disorder did not result in a marked restriction to Plaintiff's ability to engage in

activities of daily living (§ 12.04B1), maintain social functioning (§ 12.04B2), maintain

concentration, persistence or pace (§ 12.04B3), or result in repeated episodes of

decompensation each of extended duration (§ 12.04B4).  (R. 33).  The ALJ further

determined that Plaintiff was not disabled under § 12.04C of the listed impairments

because no medically documented history of Plaintiff's disease over at least a two year

period supported that Plaintiff's bipolar disorder caused more than a minimal limitation

to Plaintiff's ability to do basic work activities and resulted in repeated episodes of

decompensation each of an extended duration (§ 12.04C1), that Plaintiff's residual

disease process did not result in such marginal adjustment that even a minimal increase

in mental demands or a change to Plaintiff's environment would cause Plaintiff to

decompensate (§ 12.04C2), or that Plaintiff required a highly supportive living

arrangement (§ 12.04C3), such that Plaintiff is not disabled.  (R. 33-34).  Plaintiff

maintains that the ALJ's finding that Plaintiff is not disabled under § 12.04 is without

support of substantial evidence, as the ALJ failed to develop the record with regard to

Plaintiff's treatment with Ms. Janik and Ms. Emminger who found Plaintiff exhibited

symptoms relating to plaintiff's capacity for maintaining social functioning, concentration,

persistence and pace.  Plaintiff's Memorandum at 14.

As Plaintiff contends, Plaintiff's Memorandum at 15, the record in this case is

sparse.  The first evidence to indicate that Plaintiff received mental health treatment for

Plaintiff's bipolar disorder, depression and anxiety is dated on April 25, 2007, when Dr.

Rahman reviewed a blood test administered to Plaintiff on April 18, 2007, and noted that

14

Plaintiff reported that the Lexapro that Plaintiff was prescribed was not working to alleviate Plaintiff's psychological symptoms.  (R. 312-19).  Although such evidence supports that Plaintiff received mental health counseling for some time prior to Plaintiff's visit to Dr. Rahman April 25, 2007, there is no evidence contained in the record that details such treatment.

Moreover, during Plaintiff's visit to Dr. Pawlowski on October 3, 2008, Dr. Pawlowski noted that Plaintiff was prescribed Lamictal prior to Plaintiff's visit, but there is no indication of which treating source first diagnosed Plaintiff's mental impairment, when such diagnosis was made, or who first prescribed Plaintiff's medication or why. (R. 323).  On January 28, 2009, Nurse Practitioner Frisicaro noted that Plaintiff reported taking Lamictal, Lexapro, and Risperdal for three years prior to being terminated for non-compliance 6 months earlier (R. 400), but no evidence in the record exists to support who acted as Plaintiff's treating sources since 2006, the date upon which Plaintiff provides that he was first prescribed medication to alleviate symptoms from his mental impairments.  (R. 400).  On May 5, 2010, Ms. Janik indicated on a from submitted by Plaintiff's attorney, that she provided Plaintiff with bi-weekly mental health counselling sessions (R. 395), but no treatment records in the record denote those treatment sessions or any observations of Plaintiff by Ms. Janik, and the ALJ made no attempt to secure those records.

The record also indicates that Plaintiff underwent psychiatric counseling with Ms. Emminger (R. 331-32), but, as with Ms. Janik's counseling of Plaintiff, other than the Mental Health Comprehensive Behavioral Health Assessment form provided in

15

response to the Defendant's request for records, no actual treatment records of those counseling sessions exist in this record.

Although a disability claimant is responsible for providing evidence upon which an ALJ can rely to assess a claimant's residual functional capacity, the ALJ "is responsible for developing [the claimant's] complete medical history, including arranging for any consultative examinations if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own sources." 20 C.F.R. § 416.945 (citing 20 C.F.R. § § 416.912(d) through (e)). On this record, it is clear that important treatment notes are missing, and the ALJ failed in his duty to develop the record to obtain a complete picture of Plaintiff's mental health treatment. *See Johnson v. Colvin*, 2016 WL 624921 at, *3 (W.D.N.Y. Feb. 16, 2016) (remand proper where the ALJ did not obtain treatment notes to fill a gap in the record).

The record indicates that upon the Social Security Administration's unsuccessful attempts to secure treatment information from Horizons (R. 262-277), the Plaintiff requested the Defendant contact Ms. Emminger and Ms. Janik to obtain Plaintiff's treatment records. (R. 281). Although Ms. Emminger responded to Defendant's request by providing a Mental Health Comprehensive Behavioral Health Assessment dated on September 17, 2008, no specific treatment records of Plaintiff's counseling sessions were included with Ms. Emminger's response, nor were any requested by the ALJ. (R. 340-55). At the request of Plaintiff's counsel, Ms. Janik completed a Mental Residual Functional Capacity Questionnaire that indicated that Ms. Janik provided Plaintiff with bi-weekly counseling sessions (R. 393), yet, upon the ALJ's receipt of Ms.

16

Janik's report, the ALJ made no further attempt to follow-up and secure particularized notes of those counseling sessions.

The gap in the record of Plaintiff's condition and related treatment in this instance is particularly significant because the Plaintiff directed the Defendant to contact Ms. Emminger and Ms. Janik for records, yet the information provided did not include specific records of Plaintiff's counseling sessions with either Ms. Emminger or Ms. Janik that may, given their diagnosis of Plaintiff's bipolar disorder, have contained important information about Plaintiff's bipolar disorder relevant to Plaintiff's alleged disability. Remand for further consideration is thus required to afford the ALJ the opportunity to obtain particularized records of Plaintiff's treatment with Ms. Emminger and Ms. Janik, and any other records related to Plaintiff's mental health treatment from the date of Plaintiff's alleged disability onset of December 1, 2005. *See Atkinson v. Barnhart*, 87 Fed. App'x 766, 768 (2d Cir. 2004) (remand appropriate where the ALJ did not seek out treatment records obvious in their existence and consistent with plaintiff's testimony that may have contained information pertinent to the ALJ's decision). The Plaintiff's testimony that he attends mental health counseling sessions on a regular basis (R. 71-72), provides further support that the ALJ's determination was not based on the entirety of the evidence in the record. *Id.* Further, based on its finding that more supplementation is required, the court has an obligation to remand. *Atkinson,* 766 at 768 (reversing the district court in light of ALJ's need to supplement the record).

Upon reviewing such evidence, the ALJ should include such evidence in the ALJ's reconsidered disability determination of Plaintiff.

Because the record upon remand will "necessarily be altered" upon its further development, *see Crowley v. Colvin* 2014 WL 4631888, at *5 (S.D.N.Y. 2015), and thereby, alter the disability analysis of the ALJ, the undersigned does not proceed to address Plaintiff's further contentions regarding Plaintiff's residual functional capacity assessment, Plaintiff's Memorandum at 15-17, and unsuccessful work attempts. Plaintiff's Memorandum at 18.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for remand for further development of the record should be GRANTED. Defendant's motion should be DENIED, and the matter remanded in accordance with this report and recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 22, 2016
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      March 22, 2016
              Buffalo, New York